MABEY, The R. L.   See Cases Nos. 6,333 and 6,334.

## Case No. 8,653.

### MABIE et al. v. HASKELL et al.

[2 Cliff. 507.] 1

Circuit Court, D. Massachusetts.   Oct. Term, 1865.

PATENTS—SHOE LASTS—COMBINATION—PURPOSE OF DESCRIPTION IN PATENT.

1. The claim in a patent for an improved shoe-last was as follows: "The sectional shoe-last a, b, c formed in the manner specified, with the measurement 4 (which is the line drawn across the last from the corner of the toe to the back of the heel, at the upper part) as short as the measurement at the line 6 (which is the line drawn around the base of the last, from the corner of the toe to the centre of the heel at the junction with the sole), for the purposes as specified." Held, that the claim was not for a combination, where the invention consisted of a new arrangement of several old elements, but was for the peculiar form of the described device, in which the toe was elevated higher than usual, the back of the heel thrown forward, and which was as short in the first measurement described as in the second.

2. The purpose of the requirement of law, that an invention shall be described, in the patent, in such full, clear, and exact terms as to enable one skilled in the art to construct and use the same is twofold: first, that, when the patent has expired, the public may avail themselves of its benefits; second, that, while the patent is in force, the public may not ignorantly infringe it, for want of clear definition of its character.

3. It is not a defence to the charge of infringement upon a patent for an improved shoe-last, that it cannot be construed to embrace boot-lasts, when it appears in evidence that respondents had used the invention, without alteration, in the manufacture of boots as well as shoes.

4. It was set up in defence that the respondents did not infringe the rights of the complainants, because the last made by respondents was made in two, while that of complainants was made in three sections. Held, that such a defence only had force where the patent of the complainant was for a combination, all the elements of which were old, and which was only

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

infringed when the entire arrangement or combination was wrongfully used.

[Cited in Rees v. Gould. 15 Wall. (82 U. S.) 194; P. P. Mast & Co. v. Rude Bros. Manuf'g Co., 3 C. C. A. 477, 53 Fed. 124.]

This was a bill in equity founded upon letters-patent [No. 36,495] on a certain improvement in shoe-lasts. The inventor, one Nathaniel Jones, during the pendency of his application, assigned the entire interest to the complainants, to whom the patent issued September 16, 1862. The bill charged that the defendants had on the 1st of June, 1863, infringed the patent, and prayed for an injunction and for an account. The defenses were: First, that the assignor of the complainants was not the original and first inventor of the improvement set out in the patent; second, that the invention was not described in such full, clear, and exact terms as to enable a person skilled in the art to construct it; third, a denial of infringement on the part of the respondents.

T. S. Wakefield, for complainants.

J. W. Hubbard, for respondents.

CLIFFORD, Circuit Justice. The state of the art at the date of the invention is first described by the inventor. He states that it was usual, prior to his invention, to form the bottom of the last, so that a straight line would touch the bottom of the heel, and the sole of the foot part, raising the toe end of the last but little above a projection of that line, while the last at the back end of the heel was almost at right angles to such a line. The injurious effect of such a construction was, as the inventor states, that in walking, the person wearing such shoes found that the heel of the foot was apt to slip up and down in the shoe, and that the shoe itself, or the upper leather thereof, was apt to wrinkle over the front of the foot and at the side of the ankle. The reasons of the difficulty, as explained, are that a line measured around the lower edge of the last, from the corner of the toe to the centre at the back of the heel, was less, in a last so constructed than a line measured from the same point of the toe to the back part of the last, near the top thereof, which made the shoe, as compared with the foot, measure most in the wrong place. Having stated the difficulties to be overcome, he proceeds to describe his invention, and says that it consists in so forming the last and cutting the "uppers," that the measurement from the point of the toe to the centre at the back shall be as small or smaller than the measurement at the lower part of the last, which improvement is effected, as the specification states, by raising the toe of the last, and drawing in the upper part of the last at the back above the heel. The beneficial effect of a last so formed is, that the shoe takes a bearing on the upper part and sides of the foot, sufficient to prevent the motion of the heel in the shoe, and the sole being made nearly in the form it will

assume after the shoe is worn, there will be no wrinkles in the upper leather of the shoe. The next step of the inventor is to describe what he calls his improved last, and "the principle on which it is shaped." Reference is then made to the drawings; and the statement of the inventor is, that the device there delineated will show more fully the peculiarity of shape given to the shoe, demonstrating that the alleged peculiarity of shape or form is the characteristic feature of the invention. Figures two and four of the drawings represent the last in three sections. Part a is the main section of the last; part b is the usual front or instep piece; and part c is a heel section formed by sawing off the back part of the last diagonally from near the junction of the sole with the back of the last. The statement of the specification is, that these sections are held together by dowels and a screw. The peculiar shape of the last is again pointed out by reference to the red lines in the drawings; and the allegation is, that the toe of the last, constituting the patented invention, is elevated higher from the base line, as there indicated, than is usual, and that the back of the heel at the upper part is thrown forward. The extent of these changes is such that a line drawn across the last from the corner of the toe to the back of the heel, at the upper part, will be as short or slightly shorter than a line drawn around the base of the last from the corner of the toe to the centre of the heel, at the junction of the sole. Whereas the reverse of that, as the inventor states, is true in lasts made prior to his invention. The representation also is, that the patterns for "uppers" are cut with reference to the peculiar shape of the last, and that many advantages result from the use of this invention. One is, that the shoe can be made for a higher instep than with the old lasts, without interfering with the mode of obtaining a correct draught of the heel and sides of the shoe. When completed, also, the shoe assumes a shape adapted to the form and position of the foot; so much so, that if a fit be made moderately tight, the shoe will remain on the foot without any lacing, and the heel will not move up and down in walking, because the leather will set closely to the sides of the foot. Such is the description of the invention as set forth in the specification and as illustrated in the drawings. The claim of the patent is as follows: "What I claim and desire to secure by letters-patent is the sectional shoe-last (a, b, c) formed in the manner specified with the measurement 4 (which is the line drawn across the last from the corner of the toe to the back of the heel at the upper part) as short as the measurement at the line 6 (which is the line drawn around the base of the last from the corner of the toe to the centre of the heel at the juncture with the sole), for the purposes and as specified." Evidently the claim is not for a combination, as where the inven-

tion embraces several old elements, and the improvement consists in some new arrangement of those elements, whereby a new and useful result is obtained. On the contrary, it is quite clear that what the inventor claims is the forming the last as described, that is, that the toe of the last shall be elevated higher than what was usual prior to the date of the invention, and that the back of the heel shall be thrown forward, as shown in the drawings, and that the last, "formed in the manner specified," shall be as short or slightly shorter in the first measurement described in the claim than in the second measurement. Carefully examined, it is clear that it is a patent for the peculiar form of the described device, and not for a combination, as understood in the decided cases.

The respondents deny that the assignor of the complainants is the original and first inventor of the improvement, and upon that question the parties have examined more than forty witnesses. The parties must be content, under the circumstances, with the statement of the conclusion of the court upon matters of fact, as the separate examination of the testimony of the witnesses would extend the opinion to an unwarrantable length. Suffice it to say, after an attentive perusal of the testimony. I am of the opinion that the invention in controversy is both new and useful. Elevating the toe will not accomplish the result, unless that change be combined with the described alteration at the heel; and it is a great mistake to suppose that the alteration at the heel of the last consists merely in making the particular measurement shorter by cutting off the heel part of the last at the top. The patented improvement contemplates nothing of the kind, but the heel part is thrown forward, which has the double effect to produce the proper swell on the sides of the last, and also to shorten the line from the corner of the toe to the back of the heel at the top. Attention to the true construction of the patent and to these explanations will show that the most of the testimony introduced by the respondents is either erroneous or has no application to the real nature of the invention.

The second defence set up by the respondents is, that the invention is not properly described in the specification, but I am of the opinion that the objection is entirely without merit. Instead of being indefinite and insufficient, as is supposed, the description is in fact unusually full and precise. The requirement is, that it shall be in such full, clear, and exact terms as to enable any one skilled in the art to make, construct, and use the invention. The purpose of the requirement is twofold: first, that when the term has expired and the invention becomes public, such means of information may be accessible as will enable others to avail themselves of its benefits; and, second, that, while the patent is in force, others may be informed of the precise claim, and not ignorantly infringe upon the exclusive right. The meaning of the requirement is, that the specification shall be so clear that it may be understood by ordinary mechanics, and that the thing described can be made from the description and the drawings. Hogg v. Emerson, 11 How. [52 U. S.] 606. The description in this case is full and satisfactory, and the objection is overruled.

The third defence is a denial of the charge of infringement; but the denial is special, and on that account deserves to be carefully considered. The improvement as claimed is for shoe-lasts, and the argument is, that it cannot be considered as including boot-lasts. But the evidence shows that the respondents have used it for the making of shoes as well as boots, and that the improvement is suited for the making of the latter as well as the former, so that the objection in any point of view cannot prevail. The remaining ground assumed by the respondents, in this branch of the case, is, that they do not infringe, because, as they insist, the last they make, use, and vend is a last of two sections, and not of three, as described in the specification of the complainants' patent. They insist and well insist, that where an invention consists merely in a combination of elements, all of which are old, a party is not guilty of infringement who uses only a part of those elements. The leading case upon that subject is that of Prouty v. Ruggles, 16 Pet. [41 U. S.] 340, in which the opinion was given by the late chief justice. The instructions given to the jury in that case were, that, unless it was proved that the whole combination was substantially used in the defendants' machine, the act complained of was not a violation of the plaintiffs' patent, although one or more of the parts specified were used in the combination of the defendants. Exceptions were taken to that part as well as to other parts of the charge, but the exceptions were overruled, upon the ground that none of the parts were new, and that the patent was for a combination, and that the invention consisted merely in arranging different parts of the machine in the manner stated in the specification. for the purpose of producing a certain effect. The correctness of that decision cannot be denied, but the answer to it as applied to this case is, that the improvement in question is not a combination, as has already appeared. Hall v. Wilds [Case No. 5,954].

In view of the whole evidence, I am of the opinion that the respondents are guilty of infringement, as is alleged in the bill of the complainants.

The complainants are entitled to a decree.