DUNLAP v. WILLBRANDT SURGICAL MFG. CO et al.

(Circuit Court of Appeals, Eighth Circuit.    November 30, 1906.)

No. 2,312.

1. PATENTS—INFRINGEMENT—ATOMIZER.

The Dunlap patent, No. 483,435, for an atomizer, claim 2, the principal feature of which is that the tube which enters the bottle is made in three separate parts, to facilitate cleansing, one of which parts is a hollow coupling uniting the other two, is not entitled to a broad construction, and, as limited by the prior art and the language of the claim, each of the three parts of the tube described is an essential element of such claim, and it is not infringed by a structure in which the tube is made in two parts directly joined together.

2. SAME—CONSTRUCTION—SCOPE OF CLAIMS.

A patentee is entitled to every function his device will perform, though he was ignorant of it when he procured his patent, but he secures no patent on the function, and the discovery of a new one in the patented device does not operate to enlarge or broaden the letter of his claim, which is the measure of his rights.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 241–247.]

3. SAME—INFRINGEMENT—ATOMIZER.

The Dunlap patent, No. 620.895, for an atomizer or vaporizing apparatus, claims 2 and 3 are void for anticipation. Claim 8 *held* not infringed.

4. TRADE-MARKS AND TRADE-NAMES — UNFAIR COMPETITION — SIMILARITY IN APPEARANCE OF ARTICLES.

Evidence considered, and *held* to support a finding that a defendant was not chargeable with unfair competition in making, advertising, and selling an atomizer similar in appearance to complainants', which was not protected by any trade-mark or design patent, where the names given the two devices were different, and each was indelibly stamped with the name and address of the manufacturer, and there was no evidence of an intent to deceive purchasers.

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Fred L. Chappell, for appellant.

Geo. E. Waldo, for appellee.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

HOOK, Circuit Judge. This is an appeal from a decree rendered upon final hearing dismissing the complainant's bill. The suit was brought by Dunlap against the manufacturing company and Willbrandt, its president and manager, for an injunction and an accounting because of an alleged infringement of letters patent No. 483,435 issued September 27, 1892, to Dunlap, for new and useful improvements in atomizers, and of letters patent No. 620,895, issued to him on March 14, 1899, for new and useful improvements in atomizers and vaporizers and apparatus pertaining to the same. There was also embodied in the bill a charge of unfair competition as distinguished from the alleged infringement of the patents.

1. As to the first patent in suit: The controversy, so far as concerns this patent, is confined to the second claim thereof, which is as follows:

"(2) In an atomizer, the two-part spraying-tube having a side opening in the lower member and a hollow coupling connecting the two parts, said coupling having a side opening to register with the side opening in the tube, substantially as described."

The defense is noninfringement. The device of complainant belongs to that class of atomizers in which the spray or vapor is produced within a closed bottle or other receptacle, and is then forced out or withdrawn for inhalation or application. The upper end of the tube, which is designed to be inserted in the bottle containing the liquid to be vaporized, is screwed into the lid or covering of the bottle, and the lower end is immersed in the liquid, but does not quite touch the bottom. Air under pressure is forced into the tube at its upper end and proceeds downward through the passage therein, through a continuing passage in the coupling, and thence out through the side openings in the coupling and the lower tube. The exit of the air is above the level of the liquid at the bottom of the bottle. The lower end or nipple of the coupling is beveled on one side, and the space between the beveled surface and the inner surface of the lower tube forms an extension, so to speak, of the passage in the lower tube, upward to the opening in the side thereof. The downward and lateral rush of the air across the opening formed by the beveling of the coupling creates a partial vacuum and causes the liquid to rise in the lower passage, and it is then blown forcibly outward through the side opening in the tube and against the side of the bottle, so transforming it into spray or vapor. The structures handled by defendants which are alleged to contain infringing features are known as the "Eureka Nebulizer" and the "Multiple Comminuter." The latter may be dismissed from special consideration in this connection because we are of the opinion that it contains no infringing device if none can be found in the nebulizer. There is such similarity that it will be sufficient, for this branch of the case, to confine our consideration to the tube of the eureka nebulizer. This tube is composed of but two pieces which are connected by means of a screw joint. It has no separable coupling, and in this respect differs from the tube of complainant. The atomizing part of the structure, the part where the openings in the air and liquid passages come together, is in the lower member of the tube and not in a coupling. The

atomizing device is wholly complete in the lower member of the tube. The upper member, which is detachable, performs no function in the atomizing; its office being merely to conduct the air to the lower portion of the tube.

The complainant was by no means a pioneer in the art to which his patent relates. Devices for atomizing liquids were well known years before he entered the field, and they involved the use of tubes for the conduct of air under pressure to a contact with liquids for the atomizing process. There are three patents preceding that of complainant which exhibit atomizing tubes not greatly dissimilar from that of the defendants. The Lighthill patent, No. 365,265, June 21, 1887, shows an atomizer or nebulizer in which the air and liquid tubes are integral and constitute substantially a single straight stem. The vertical air passage at its lower end takes an abrupt turn to the horizontal, and terminates with an opening in the side of the tube close to the upper exit of the liquid passage. In the Shurtleff patent, No. 379,611, March 20, 1888, there is also an atomizing tube in a single piece which differs in shape, but the operation of which is like that of Lighthill. In the Semple patent, No. 290,486, December 18, 1883, for improvements in inhalers, an air and a liquid tube are shown, and whether they should be fastened together or remain separate is expressed to be a matter of preference. Its operation is similar to that of Lighthill and Shurtleff. Other patents appear in the record indicating the stage of the art, but none of the structures described are sufficiently similar to those here involved to require description.

In view of the state of the prior art the complainant is not entitled to a broad construction of his claim. He came into a field already explored, took a single-piece atomizing tube and divided it into three adjustable parts for convenience in cleansing, and incidentally arranged the discharge openings in conformity therewith. He specified five distinct elements in his structure: (1) The upper tube member; (2) the lower tube member; (3) the hollow coupling; (4) the side opening in the hollow coupling registering with (5) the side opening in the lower member. It is altogether clear that complainant made the separability of his structure into three parts, the dominant feature of his claim. His reason for doing so is thus clearly expressed in his specification:

"The object of my invention is to produce a simple atomizer which is durable and comparatively inexpensive, which may be easily operated so that a patient may get the full benefit of the spray, which is not liable to corrode, which may be easily taken apart or put together, and which, in consequence of its easy separableness, may be conveniently used for producing balsamic sprays, as solutions containing balsam are apt to clog spraying-tubes, and my invention provides for easy cleaning."

None of these declared objects are subserved by the arrangement of the discharge openings within the tube. In the defendants' device two of the complainant's elements are lacking, namely, the hollow coupling and the side opening in the hollow coupling registering with a similar opening in the lower tube member. The complainant calls his device a "two-part spraying tube with a hollow coupling," but it is really composed of three. The third is the coupling itself, and it is indispensable

to the physical union of the other two and to the operation of the device as a whole. Moreover, from the standpoint of the patent, the division of the tube into three separable parts is not a mere unnecessary detail of construction that may be dispensed with by the complainant. It is put forward as an important and emphasized feature, and is called for by the declared purpose of his structure. He says that solutions containing balsam are apt to clog the tubes, and that on account of its separableness "my invention provides for easy cleaning." Of course, there are cases in which, in determining whether a subsequent device infringes, it is unimportant whether it is made in two pieces instead of three, or whether a member is mechanically attached to the remainder of the structure or is made integral with it. Examples of such cases are Clough v. Barker, 106 U. S. 166, 1 Sup. Ct. 188, 27 L. Ed. 134; Standard Caster & Wheel Co. v. Caster Socket Co., 51 C. C. A. 109, 113 Fed. 162; Mabie v. Haskell, 2 Cliff. 507, Fed. Cas. No. 8,653. They are, however, inapplicable to a case in which the very divisibility into parts or in which the particular method of attachment constitutes the law of the structure or is declared or appears to be of the essence of the supposed invention. This distinction is made apparent by the Castor Socket Case, supra, in which there was a patent for an improved socket for receiving the shank of a furniture caster. The socket was divided longitudinally into two equal parts which in use were put together and driven into a prepared opening in a furniture leg. The inner side of one of these halves was provided with an integral-tongue or spring which pressed against the castershank, and thus prevented the caster from falling out of its own weight when the furniture was raised from the floor. It was held that this patent was anticipated by an older one in which the socket was divided into halves, each containing a tongue or spring "riveted on the inside." It is apparent that it was immaterial for the purpose of the structure whether the spring was riveted to or made integral with one of the other parts. The same distinction appears in the Shoe Last case. Mabie v. Haskell, supra. The peculiarity of the shape of the shoe last was the characteristic feature of the invention, and not whether it was divisible into two or into three sections. The invention consisted of the elevation of the toe and the drawing in of the upper part of the last at the back above the heel; the result being that in a shoe formed on such a last the heel of the wearer would not move up and down and the leather of the upper would fit without wrinkling. The patented last was made in three sections, while that of the infringer was made in two, but the claim of the patentee was not for a combination consisting of a number of elements. Whether the last was made in two or in three sections was immaterial in securing the object of the patentee.

The complainant here, invoking the doctrine of equivalents, claims that the defendants' tube composed of two members without a separable coupling is mechanically the same as his. It is no doubt true that the mere joinder of two elements into one integral part or the separation of one part into two may be an infringement if the change in the structure accomplishes the same results in substantially the same way; but we are of the opinion that this rule does not help the complainant. The

complainant took an old device, a single atomizer tube, and divided it into three parts so that the clogging from the use of the balsamic solutions could be expeditiously remedied. If this called for the exercise of the inventive faculty, the scope of the invention is very narrow and the complainant's rights in respect of protection from equivalent structures are correspondingly limited. He is protected only against those structures that embody the very device he describes and those that are mere colorable evasions. National Hollow Brake-Beam Co. v. Interchangeable, etc., Co., 45 C. C. A. 544, 106 Fed. 693. The complainant's claim that his patent covers atomizer tubes made in two parts without any connecting hollow coupling is admissible only by according to it a broad and comprehensive construction such as it would be entitled to were it a pioneer in the art to which it relates. With equal reason his patent might be extended a step further and be held to include tubes made in a single unseparable piece. Indeed, the complainant testified in the closing of his case that, giving his patent a broad interpretation to which in his judgment it was entitled, a single-piece tube containing the air and liquid passages and discharge openings like those of defendants' structure would embody the second claim of his patent. And he said in respect of his own patent that the question of separate or integral construction of the hollow coupling was a matter of variation in details of mechanical construction. The arrangement of the air and liquid passages and of the discharge openings was then for the first time put to the front as an important element of the invention. This is a belated conception of the claim of the patent. The only suggestion of it in the claim or in the specifications is the statement that the coupling has a side opening which registers with a side opening in the lower tube, but in no other way was it foreshadowed that a claim was made for a registering of the discharge openings within the walls of the tube, and in no way whatever was it suggested that a claim was made for any particular arrangement of the air and liquid passages. When complainant first testified as an expert in his own behalf, and was closely cross-examined as to the various structures, including his own, their parts, similarities, differences, functions, and results, he did not refer to these features as having a special significance. It was afterwards said, however, and is now urged, that the interior arrangement of his tube is particularly important and is valuable, in that it requires less force of air to bring the solution up the lower tube to the point where it is atomized than was the case with the older structures. A patentee is entitled to every function his device will perform, though he was ignorant of it when he procured his patent. But he secures no patent on the function, and a discovery of a new one in a patented device does not operate to enlarge or broaden the letter of his claim. It is the claim which measures the rights of the patentee, and that which is not claimed is, so far as the particular patent is concerned, dedicated to the public. There is nothing in the patent here which entitles the complainant to any novel or particular arrangement of the air and liquid passages; and, if it can be said that the claim covers a new arrangement of the discharge openings as distinguished from the air and liquid passages, it must be answered that.

it was expressly claimed in connection with a hollow coupling which he made indispensable and which is not found in the defendants' structure, and that the very narrow character of the complainant's advance over the prior art does not authorize the broad construction for which he contends.

2. The second patent in suit: The charge is that the defendants have infringed claims 2, 3, and 8. The defenses are invalidity and non-infringement in respect of claims 2 and 3, and noninfringement in respect of claim 8. The claims are as follows:

"(2) In an atomizer or vaporizing apparatus the combination of an atomizing device; a chamber or receptacle for the storage of the atomized vapor; a tube or nozzle leading therefrom; means for controlling the passage from said chamber so that the vapor can be stored and delivered under pressure for rapid or extensive use, as specified.

"(3) In a vaporizer or atomizer apparatus the combination of a suitable atomizer; a chamber for storing the atomized vapor under pressure; a valved outlet constructed to open and close in rapid succession to control the discharge therefrom for the purpose specified."

"(8) In an atomizer or vaporizer the combination with an atomizing or vaporizing device of a receiver provided with an outlet, a valve for closing the outlet of the receiver having a suitable stem, the valve-stem being provided with a head at its outer end and with a collar or shoulder a short distance therefrom, and an adjustable stop, through which the portion of the valve-stem between the head and shoulder or collar works, substantially as described."

The subject-matter of the patent as exhibited in the claims above set forth is an apparatus designed for the treatment of diseases of the ear, nose, throat, and lungs by means of vaporized medicaments under pressure administered in either a continuous or intermittent current. The claims in question relate to certain features of a structure which may be briefly described as follows: A number of medicine flasks or bottles are supported on an air supply tube, each flask or bottle being provided with an atomizer tube communicating with the air supply pipe; the passages connecting the air supply pipe with the atomizer tubes being controlled by valves. All of the flasks or bottles are in open communication with a central receiver by means of tubes; the receiver being provided with an outlet leading to a discharge tube which is controlled by a valve. The three claims differ principally in the description of the means of controlling the passage of the vapor through the discharge tube.

Methods for making and administering nebulized or vaporized medicaments under pressure and the interruption of the current so as to render it intermittent, thus producing what is properly called a "vapor massage," did not originate with the complainant. His patent was issued March 14, 1899. The application therefor was filed April 22, 1897. In an article by Dr. George F. Hawley, published at Chicago in the Journal of the American Medical Association of the issue of May 12, 1894, an apparatus for nebulizing nonvolatile medicaments and a method of administering the vapor by the process of forced dilatation was described in detail. In the same year the article was published in pamphlet form for distribution. The apparatus which was described and also illustrated consisted of a number of glass bottles, one for

each kind of solution, adapted for use in connection with a compressed air receiver. A valve at the top of each bottle was provided with inlet and outlet ports capable of being opened or closed by turning a faucet. The inlet port of each bottle was connected with the compressed air receiver and also with an atomizing tube descending into the bottle. By turning the faucet the compressed air passed into the bottle and down the tube, producing vapor in the manner we have already mentioned in connection with the first patent in suit. To the outlet port of each bottle was attached a flexible tube ending in a mouthpiece or nozzle. Through these tubes the vapor under pressure communicated through the bottle from the compressed air receiver was forced into the passages and cavities of the body to be treated by a process of dilatation. The author also described in detail the process of vapor massage by changing the continuous current of vapor into one that was intermittent, and this was accomplished by the rapid manipulation of the passages of the body into which the vapor was introduced. This process he called "massage." Thus he says:

"The undulations of the impacted nebula will render the mouth of the Eustachian tube more patent and act as a massage on the diseased tissues of the midlde ear, equalizing the circulation and tending to break up adhesion of the ossicles by causing them also to vibrate."

Again:

"In my practice, however, in massaging the diseased, paralyzed, atrophied, or hypertrophied tissue and in dilating the Eustachian tubes, and in medicating and breaking up adhesions in the middle ear, the best results have been obtained by using a pressure of from 30 to 50 pounds."

Again:

"But nebula, impacted from nonvolatile medicaments and administered by forced dilatation with gentle but rapid vibration, offers the only safe and efficient method for medicating and massaging the middle ear."

The assertion by the complainant that he discovered a novel method of treatment which may be termed "vapor massage" is in view of this article which preceded his entry into the field certainly unfounded. The method is particularly described and the term "vapor massage" is plainly suggested by the language of the article; and it required no inventive faculty to discover that the desired intermittent effect of the current of vapor could also be produced either by compressing and releasing the discharge tube if it were sufficiently pliable, or by the manipulation of a control faucet at the top of the storage bottle. If, in the apparatus which the author of the article described, there had been a valve in the discharge pipe constructed to open and close rapidly, and to thus control the discharge of the vapor, it would have completely anticipated the second and third claims of complainant's patent.

In the Emery patent, No. 196,206, October 16, 1877, the apparatus is adapted, among other things, to the treatment of weak or diseased lungs. It shows a storage chamber for vapor or air, medicated or pure, under pressure, in connection with a separate receptacle for water, medicated liquid, gas, or any suitable substance or composition wherewith it is desired to saturate or charge the air in the chamber. In this receptacle is a dependent tube through which the air is forced on its

way to the storage chamber. The outlet or discharge tube of the chamber is equipped with a cock or shut-off as a means of controlling the passage therefrom.

The apparatus set forth in the Kennedy patent, No. 422,802, March 4, 1890, is for medicating, compressing, and administering air into the respiratory organs. There is a combination of a compressed air reservoir connecting on one side with an air pump, and upon the other with a number of bottles in each of which is a dependent tube. The connecting pipes into and out of the air reservoir are equipped with stopcocks. The connection with the bottles is so arranged that air under pressure is forced into them and down the tubes to a contact with the contents. In each bottle is an outlet port having immediate connection with a flexible discharge pipe, to the end of which is attached a nozzle for insertion in the mouth or nose of the patient. The stoppers of the bottles in which are located the inlet and outlet ports are equipped with valve plugs. The inlet ports are larger than the outlets to assist in the maintenance of the pressure. In the specifications it is said that in practice the bottles "are designed for the reception of the medical agents with which the air is intended to be medicated in the usual manner by vaporizing small portions thereof in passing through said agent." We therefore have in the Emery patent all of the elements of claims 2 and 3 of complainant's patent, excepting, possibly, the atomizing device, and substantially all of them in the Kennedy patent—an atomizing device, a chamber for storage under pressure, a valved outlet, and a tube or nozzle leading therefrom. It is true that there is no detailed description of the atomizing tube in either of these patents, but none of any special structure is required by the second and third claims of complainant's patent, and any device capable of atomizing would suffice. It will be noticed in this connection that Kennedy speaks of the vaporizing of small portions of the solution by the passage of air under pressure through his tube. In the Kennedy apparatus each bottle serves the double purpose of containing the atomizing device and constituting the storage chamber. In this respect it is similar to the eureka nebulizer, which, notwithstanding such construction for the double purpose, the complainant contends infringes his patent.

The Robertson patent, No. 549,822, November 12, 1895, discloses an apparatus "for atomizing, mixing, and administering liquid medicines," which is precisely like that of complainant, excepting that an outlet valve is lacking. With the outlet valve of Emery or Kennedy for the purpose of controlling the discharge of the vapor we would have in all respects a structure built upon the lines of complainant's. There is in Robertson's the same collection of bottles, each equipped with an atomizing tube of the eureka type, each connected with a tube conveying compressed air, a large central receiver bottle in which the vapors from the atomizing bottles are collected and mixed, and from which they escape by means of a discharge tube ending with a nipple for insertion into the mouth or nose.

The Palmer patent, No. 386,025, July 10, 1888, is for an apparatus for atomizing liquid by compressed air received from a reservoir.

It shows a globe with inlet and outlet tubes entering at the side, an atomizing device within the globe; the upper part of the globe constituting a storage chamber. The outlet pipe connects with a flexible hose ending in a tip. With the addition of an outlet valve this structure would answer to complainant's claims 2 and 3.

It seems clear from the foregoing that the complainant simply pursued a road previously opened and improved by others, and that he secured an old result by substantially the same means that had theretofore been employed.

There is another matter that deserves notice in connection with these claims. While the complainant's application was pending in the Patent Office, claim 2 was rejected by the examiner because of anticipation by the Emery and Palmer patents. The examiner said:

"This patent [the Palmer] shows a receiving chamber above the atomizer, and there is no invention in providing the outlet from the receiver with regulating means as this feature is shown in the Emery, No. 196,206, October 16, 1877."

And claim 3 of the patent (it was claim 4 of the application) was also rejected on the same references, "because the cut-offs shown in Emery may be opened and closed in rapid succession." After amendment by the applicant it was then held by the examiner that claim 2 was not changed in substance and stood rejected, and that the claim which is now numbered 3 in the patent was also rejected on the previous references. The examiner added:

"The references show that it is old to store vapor under pressure and to provide a valved outlet. The rapid operation of the discharge valve has reference to the manner of using the apparatus and not to its construction."

In this connection attention is directed to the action taken with reference to claim 17 of the application. It was as follows:

"In a vaporing [vaporizing] inhaler the combination of a vaporizer; a receiver or chamber for storing the vapor under pressure; a delivery pipe or tube; a tip for said pipe or tube adapted to insert into the nose or mouth; and a valve adapted to open and close the pipe in rapid succession to control the passage of vapor through the pipe for the purpose specified."

Upon rejecting this claim the examiner said:

"Claim 17 is considered to present nothing patentable over the references in the case which show that it is old to store vapor under pressure, to provide delivery tubes with tips, and to have controlling valves, which may be operated more or less rapidly."

An appeal was taken by the complainant from the action of the primary examiner to the board of examiners in chief, with result that the rejection of claims 2 and 3 was reversed and the rejection of claim 17 was affirmed. As to the latter the board said:

"Claim 17 is anticipated by the Emery patent. The substitution of an old form of tip in that device requires no new construction. Every other element of the claim is found in such device."

Claim 17 was therefore canceled and does not now appear in the patent. The significance of all this is that, while claim 17 of the applica-

tion was finally disallowed on the ground of anticipation, it is precisely the same as claims 2 and 3 of the patent. Counsel seek to avoid the significance of this inconsistency by claiming that, while claim 17 specified a vaporizer as one of its elements, it did not have among them an atomizing tube to produce atomized vapor. In other words, he seeks to make a distinction between a vaporizer and an atomizer. This will not do. A vaporizer is expressed to be one of the elements of claim 17, while in claim 2 there is specified an "atomizing device" and in claim 3 "a suitable atomizer" appears. In the production of vapor by bringing air under pressure into contact with the liquid, the terms "atomizer" and "vaporizer" are used interchangeably. In complainant's first patent he refers to the product of his atomizer as a spray which may be inhaled by the patient. In his second patent he uses the terms "atomizer" and "vaporizer" interchangeably, and he refers to the product of his device as a "spray of liquid or vapor." He also calls his atomizer or spraying tube a "nebulizing tube." In the other patents relating to the art the cloudlike product is indiscriminately referred to as "spray," "vapor," "fine atomized product," and "familiar atomized condition." Dr. Hawley spoke of it in 1894 as "nebula." In the specifications in the Palmer patent it is said:

"Although we have used the term 'atomizer,' it will be understood that in ordinary practice, blowing in liberal quantities of warm dry air ready to absorb the vapor, the liquid is in the course of the treatment evaporated, and its vapor mingles with the air and is conveyed to the lungs through the inhaling tube in the form mainly of vapor. The terms 'atomizer' and 'vaporizer' may be used in this relation as equivalents."

The result of this is that the presumption which attends the issue of a patent and of which the patentee is entitled to avail himself is in this case seriously impaired.

Claim 8 of the second patent in suit is not infringed. The complaint in that respect is more on account of a superficial similarity of consruction that bears on the question of unfair competition than because of a supposed infringement. It is conceded that the particular device in defendants' structure which looks like that embodied in claim 8 has no function whatever.

3. Embodied in complainant's bill is also a charge of unfair competition, in that the defendants, by copying the form of his apparatus and by using certain phrases and catch words in advertising matter, were deceiving the public into the purchase of their instruments under the belief that they were purchasing those of the complainant. The complainant possessed no trade-mark and no design patent securing to himself the exclusive right to the form or dress of his apparatus. And we fail to discover in the record any evidence of fraudulent intent upon the part of the defendants to palm their goods off on the public as the goods of the complainant or as manufactured under his patents. The general resemblance was not such as to deceive the class of persons who would naturally be expected to be interested in or to purchase articles of that character. Moreover, those of the complainant were permanently marked as issuing from "The Globe Mfg. Co., Battle Creek, Michigan, U. S. A.," while those of the defendants were as indelibly

marked "O. Q. Holman, La Grange, Ill." The name "Globe" appeared upon the former and the name "Eureka" upon the latter. Thus far the defendants did not offend. See Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118. The literature used by the defendants in advertising was equally distinguishable from that of the complainant, in fact, so much so as to relieve them from the slightest imputation of unfair dealing in that particular. In this same connection the complainant complains of the use by the defendants of the terms "vapor massage" and "multi-nebulizer," of which he says he was the inventor and first user. But both of these terms are purely descriptive, the former of a method of massage described by Dr. Hawley in 1894 and the latter of any instrument composed of several atomizers, vaporizers, or nebulizers so arranged as to be used in common and in concert. From the mere circumstance of their use by the defendants we cannot infer a fraudulent intent to sell their goods as those of the complainant, especially since they have plainly and expressly indicated to the contrary by the brands permanently fixed upon the appliances they put forth and by the language of their advertising literature.

The decree of the Circuit Court is affirmed.

SANBORN, Circuit Judge (dissenting). The invention secured by the second claim of letters patent No. 483,385 was not, in my opinion, the combination of numerous mechanical elements, or the combination of the specific parts of which the mechanical device there claimed was composed, but it was "the two parts spraying tube having a side opening in the lower member and a hollow coupling connecting the two members, said coupling having a side opening to register with the side opening in the tube substantially as described." The description in the specification was that the upper or air tube should be connected to the lower or liquid tube by a hollow coupling with a nipple at each end, which might be screwed into the respective tubes, and that the nipple which entered the lower tube should be flattened on one side and should be provided with a side opening which should register with a similar side opening in the liquid tube. This specification disclosed two new things: (1) A spraying tube in which the atomizing blast was applied to the liquid within, instead of without the liquid tube; and (2) a spraying tube separable into three parts in lieu of one separable into two parts or of one made in a single piece. The purpose of the improvement was to better atomize liquids. This end was accomplished by applying the blast of air within the tube which contained the liquid, instead of without it, as had been done previous to this invention. The location and registering of the side openings in the air tube and the liquid tube conditioned this improvement, and it was unaffected by the union or separation of the various parts of the spraying tube. The question which the patent presents becomes, therefore, really a question of construction. If it be interpreted to secure a spraying tube composed of three separable parts, it is clearly void for want of invention, for, where, as in the case at bar, the performance of the function of the device is unaffected thereby, the division of a spraying tube into two or

three parts or the construction in a single piece of one formerly made in several parts exhibits no invention. Bundy Mfg. Co. v. Detroit Time-Register Co., 94 Fed. 524, 538, 36 C. C. A. 375, 389; Mabie v. Haskell, Fed. Cas. No. 8,653; White v. Walbridge (C. C.) 46 Fed. 526. If, on the other hand, the patent be construed to secure the novel device which is described in the specification and claimed in the second claim whereby the blast of air is applied to the liquid within, instead of without the liquid tube, it may be sustained; for there was no such device or application in the prior art, and the evidence is that the same amount of atomizing may be produced with this device with one-half the power required to produce it by the use of the old devices, such as those of Lighthill, Shurtleff, and Semple, by means of which the blast was applied on the outside of the liquid tube by driving it across an orifice therein. Patents are contracts between the government and the inventors, and in cases of ambiguous terms or of doubtful validity that construction which sustains and vitalizes should be preferred to that which strikes down and paralyzes them. Reece Button-Hole Machine Co. v. Globe Button-Hole Mach. Co., 10 C. C. A. 194, 198, 61 Fed. 958, 962; Consolidated Fastener Co. v. Columbian Fastener Co. (C. C.) 79 Fed. 795, 798; American Street Car Advertising Co. v. Newton Street Ry. Co. (C. C.) 82 Fed. 732, 736; McSherry Mfg. Co. v. Dowagiac Mfg. Co., 41 C. C. A. 627, 633, 101 Fed. 716, 722.

As the patent in hand is susceptible of two interpretations, one that it is a patent for the construction of a spraying tube in two or three parts instead of in one or two parts and is therefore void for want of invention, and the other that it is for a new and useful mechanical device whereby the liquid may be more efficiently and economically atomized within than it had theretofore been without the liquid tube and it is therefore valid, the latter interpretation should be preferred to the former. This seems to me to be the natural and rational construction of the patent, also, because it is the only one which secures the improvement in the spraying tube which affects its function. The registering side openings in the air tube and the liquid tube facilitate the atomizing of the liquid and constitute the improvement, while the union or separation of the parts of the spraying tube in no way affects the improvement or the facility of performance of the function of the device.

It is said that the patentee did not describe and claim this function or use of his device in his specification or claims. But he clearly described and claimed his mechanical device which performed this function. He told how to construct and operate it, and no one can make and operate it in the way he described and avoid its performance of this useful function better than any preceding device, and the fact that the defendants have adopted this device in preference to all which preceded it is a demonstration of this fact. The complainant claimed this spraying tube with these side openings substantially as described, and it was described in the specification with a hollow air tube flattened on one side inserted in the liquid tube, and provided with a side opening into the liquid tube, which registered with the opening in the latter into the glass globe, so that the application of the air blast could not fail·

to atomize the liquid within the liquid tube. The words "substantially as described" refer back to the specification, and the specification and the claim must always be read together to ascertain the actual invention the patentee made and to protect him in its use. Seymour v. Osborne, 11 Wall. 516, 547, 20 L. Ed. 33. If the spraying tube is made as the patentee describes it in his specification and claims it in his second claim, it becomes a device to atomize the liquid within the liquid tube by means of the registering side openings there described and claimed; and when one has plainly described and claimed his mechanical device and has secured a patent for it he has the right to every use to which it can be applied, to every way in which it can be made to perform its function, whether or not he described, claimed, or was aware of these uses when he claimed and secured his monopoly. Roberts v. Ryer, 91 U. S. 150, 157, 23 L. Ed. 267; Miller v. Manufacturing Co., 151 U. S. 186, 201, 14 Sup. Ct. 310, 38 L. Ed. 121; Goshen Sweeper Co. v. Bissell Carpet-Sweeper Co., 72 Fed. 67, 19 C. C. A. 13; Frederick R.. Stearns & Co. v. Russell, 85 Fed. 218, 226, 29 C. C. A. 121, 129; Manufacturing Co. v. Neal (C. C.) 90 Fed. 725; Tire Co. v. Lozier, 90 Fed. 732, 744, 33 C. C. A. 255, 268. These rules of law have forced my mind to the conclusion that the true construction of the second claim of this patent is that it secures the mechanical device with the side openings there claimed and described in the specification whereby the liquid is atomized within the liquid tube by means of the registering openings in the air tube and the liquid tube. This device was novel. The patentee was the first to conceive, to describe, or to use it. It was useful, so useful that the efficiency of the spraying tube was doubled thereby, so useful that the defendants preferred to appropriate it to using any of the prior devices whereby the liquid was atomized without the tube, and it was in my opinion patentable.

The only improvement in this patented device which affects the function, the principle, the mode of operation of the spraying tube was the side opening from the air tube into the liquid tube registering with the side opening of the liquid tube into the globe. This improvement the defendants have appropriated, and in my opinion they have thereby infringed the complainant's patent. It is true that they have made their spraying tube in two parts, while the tube described by the complainant is composed of three parts. But the union or separation of the parts neither conditions nor affects the invented improvement, which is conditioned alone by the location of the registering side openings, and which is the same in construction and in effect in the spraying tube of the defendants and in that of the complainant. No broad signification of the doctrine of mechanical equivalents is required to bring this appropriation within its meaning. The defendants have appropriated the very device and improvement which the patentee described and claimed, the device of the registering side openings whereby the air blast was conducted through the side opening in the air tube into the liquid tube at a point opposite the side opening in the liquid tube whereby it atomized the liquid within the liquid tube instead of without it. The second claim of this patent is not, in my opinion, a claim for the

combination of the various parts, tubes, or holes, which constitute the spraying tube of the patentee, nor is the form of the tube nor the number of its parts the distinguishing characteristic of the invention here patented. The invention claimed and secured is the mechanical device whereby the liquid is atomized by means of the registering side openings within the liquid tube, and the defendants may not lawfully escape their infringement of this patented invention by the form of the tube or by the separation or union of its parts which they use while they appropriate as they do the principle, the mode of operation, and the identical means described by the patentee whereby they accomplish the improved result which he attained. Columbus Watch Co. v. Robbins, 64 Fed. 384, 397, 12 C. C. A. 174, 187; New Departure Bell Co. v. Bevin Bros. Mfg. Co. (C. C.) 64 Fed. 859.

Claims 2 and 3 of letters patent No. 620,895 are for the combination of an atomizer, a chamber for the storage of vaporized medicaments under pressure, a tube or nozzle leading therefrom, and means of controlling the passage from the chamber, so that the vapor can be stored and delivered for extensive or rapid use.

The absence from a combination of a single essential element of the patented combination is fatal to it as an anticipation and relieves it of infringement. In my opinion the patents pleaded as anticipations are not such for the following reasons: The patent to Emery lacks the essential elements, an atomizer and a chamber where the vapor may be stored. Emery's chamber for compressed air has no valve or other device in the tube which conducts the air to the chamber whereby it can be kept from returning, and it has no device whereby medicaments may be atomized and then introduced into the chamber or stored therein.

The combination shown in the patent to Kennedy fails to anticipate because it lacks the essential elements, an atomizer and means for controlling the passages from the chambers or bottles provided for atomized vapor, so that the vapor can be stored or applied under pressure. The tubes which form the inlets to the bottles which contain the liquid are straight pipes whose lower ends extend below the surface of the liquid, and the only effect of applying compressed air to them is to create bubbles in the water. They neither constitute nor contain any atomizing device. The valve plugs to these bottles are so constructed that each opens and closes both the inlet and the outlet pipe of its bottle at the same time, so that the combination contains no device either for atomizing liquids or for storing vaporized medicaments under pressure.

Patent No. 549,822, to Robertson, fails to anticipate because it lacks any means of controlling the passage of the vapor from the chambers where it is manufactured so that it may be stored and delivered under pressure. There is no valve or other device whereby the outlets from the chambers may be closed so that they do not constitute storage chambers, but are manufacturing chambers only.

The rejection of claim 17 of the complainant's application by the board of examiners of the Patent Office did not estop the patentee from sustaining his patent for the combination described in claims 2 and 3, although it was the same combination described in claim 17, because

he did not acquiesce in that rejection, but insisted upon his claim and secured a patent for his combination through the allowance by the Patent Office of claims 2 and 3. It is only when the inventor acquiesces in the rejection of his claim for a patent for his invention that he is estopped by the rejection. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 45 C. C. A. 544, 565, 106 Fed. 693, 714.

The defendants have adopted a combination which contains all the mechanical elements of that of the complainant and which accomplishes the same result by substantially the same mechanical means. For these reasons, I am unable to concur in the opinion of the majority or in the judgment of affirmance in this case.