T. B. WOOD'S SONS CO. v. VALLEY IRON WORKS.

(Circuit Court, M. D. Pennsylvania.   October 19, 1911.)

No. 52.

1. PATENTS (§ 328*)—VALIDITY AND INVENTION—SHAFT HANGER.

The Wood Patent, No. 790,609, for a shaft hanger, was not anticipated, and discloses patentable novelty and invention.  Also *held* infringed.

2. PATENTS (§§ 32, 58*)—INVENTION AND ANTICIPATION—PRESUMPTIONS AND BURDEN OF PROOF.

A patent implies novelty and invention, and the burden of proof rests upon one attacking its validity to establish anticipation or lack of invention beyond a reasonable doubt.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 35, 36, 75; Dec. Dig. §§ 32, 58.*

Presumptions and burden of proof of invention, see note to American Sulphite Pulp Co. v. De Grasse Paper Co., 87 C. C. A. 264.]

3. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION.

A case of unfair competition is not made out where there is no evidence of an intention to defraud or deceive on the part of defendant and the resemblance between his product and complainant's is not such as to deceive the class of persons who buy such products.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity.   Suit by T. B. Wood's Sons Company against the Valley Iron Works.   Decree for complainant.

Prindle & Wright, for complainant.

Brock, Beeken & Smith, for defendant.

WITMER, District Judge.   This is a suit in equity, in the ordinary form, for an injunction, and for an account of profits and damages for infringement of letters patent, No. 790,609, granted May 30, 1905, to Charles O. Wood, and assigned to complainant, for improvement in shaft hangers, and for an injunction to restrain the defendant from simulating the distinctive appearance and design of complainant's shaft hanger, and an accounting for profits and damages received from or suffered because of such simulation of appearance and design.   The invention of the patent in suit relates to shaft hangers, or brackets, adapted to be hung from the rafters of a machine shop or factory, to form bearings to support a shaft at intervals.   It is highly desirable to be able to bring all the bearings, formed by a row of shaft hangers, into perfect alignment, so that the shaft held by them shall not be bent in any manner, and hence shall be free to turn with the least possible friction.   Any lack of alignment of shaft hangers would cause heating of the bearings and shaft, and waste of power, if not actual stoppage of the machinery.   The rafters are unavoidably sufficiently irregular to throw the most perfect shaft hangers out of line.   Shaft hangers are, therefore, all made with a bearing-box, more or less adjustable on the frame of the shaft hanger, so that after the frame has been fastened to the rafters, as nearly in accurate position as possible,

the bearing-box may be adjusted on the frame to bring the bearing into more accurate alignment than is possible or convenient in securing the shaft hanger, as a whole, to the rafters. It is said that the object of the invention of the patent in suit is to provide a shaft hanger of few parts, comparatively, and yet capable of every possible adjustment of the bearing-box relative to the frame of the shaft hanger which could be obtained by the utmost complication of parts, yet simple and cheap. The specifications clearly and fully describe the invention, as it also appears in the accompanying drawing, in language and form, as follows:

"In carrying my invention into practice I provide a base $A$, such base being adapted to be fastened to a portion of the building, such as the joists, and for such purpose having slots elongated in the direction of the length of the base, so that bolts can be passed through such slots and secured to the rafters, the slots permitting the hanger to be shifted on the rafter without changing the position of the bolts. From the base descend arms $a$, which are connected by a cross-arm $a'$ at a point above their lower ends. A cap $B$ is secured by bolts $D$ to the free ends of the arms $a$, and the bearing-box $C$ is supported in the space inclosed by the arms $A$ and $a'$ and the cap $B$. The cap $B$ has formed in it a vertical socket $b$, in which is an internal screw-thread. A preferably hollow screw or plunger $E$ is mounted in the socket $b$ and supports the lower side of the bearing-box upon its upper end. The bolt $E$ bears against a surface $c$ upon the under side of the bearing-box, which surface is counter-sunk or is surrounded with a rib to prevent the escape of the box from engagement with the ends of the bolt $E$, and which surface is curved transversely to the end of the box, so that the box can rock upon the end of the screw or plunger $E$ with the shaft to accommodate itself to the latter. By making the screw $E$ hollow it can be made of the necessary diameter to give it strength with the use of a comparatively small amount of metal. For the purpose of turning the screw $E$ its lower end is made polygonal in cross-section, so that it may be engaged by a wrench. A set-screw $b'$ is threaded into the wall of the socket $b$ to fasten the screw $E$ in the desired position. The arm $a'$ is provided with a socket $a^2$, which is similar to and preferably in line with the socket $b$, and a screw or plunger $F$, similar to the screw or plunger $E$, in the socket $a^2$ and engages a surface $c'$ on the upper side of the bearing-box, which surface is similar to the surface $c$, before mentioned. The surface $c$ and $c'$ are struck from a common center, so that, in effect they form, with the screws or plungers $E$ and $F$, a ball and socket joint. The screws or plunger $E$ and $F$, having a broad bearing on the bearing-box, support themselves, so to speak, on such box, so that there is little or no tendency for them to tilt laterally or get out of line with each other, as in the case with slender or round-pointed screws, and they thus form a very rigid support for the box.

"In order to provide for the lateral adjustment of the bearing-box relative to the hanger, the arms $a$ are provided with vertically-elongated slots $a^3$, which slots are approximately on a level with the bearing-box. The said slots are larger at their inner ends than at their outer ends to form a seat or shoulder $a^4$, that is adapted to support a nut $G$, through which is threaded a bolt $H$, that bears upon the side of the bearing-box. A nut-lock $I$ is preferably provided upon the screw $H$ to secure the bolt in any desired position.

"Having thus described my invention, what I claim is:

"1. In a shaft-hanger, the combination of an open frame, upper and lower vertical screws threaded in said frame, a bearing-box supported between said screws and having on its upper and lower sides cylindrical surfaces whose axes are transverse to the axis of the bearing, said surface being engaged by said screws being surrounded by flanges, said engaging ends of said screws being flat and of sufficient width to prevent rotation of said bearing-box on the shaft, and horizontal screws in the frame whose ends engage the sides of the box.

"2. In a shaft-hanger, the combination of an open frame, upper and lower vertical screws threaded in said frame, a bearing-box supported between said screws and having on its upper and lower sides cylindrical surfaces whose axes are transverse to the axis of the bearing, said surface being engaged by said screws and being surrounded by flanges, said engaging ends of said screws being flat and of sufficient width to prevent rotation of said bearing-box on the shaft, and horizontal screws in the frame, whose ends engage the sides of the box, the horizontal screws being adjustably mounted in vertical slots in the frame."

After filing the bill, but before hearing and awarding of a temporary injunction, the defendant withdrew from the market his hanger which the bill claimed embodied an infringement of the claim of the

patent in suit. The defendant admits such infringement, and in his brief counsel suggests that, "the injunction in this case might well be made permanent in so far as the original hanger, which was made before the temporary injunction issued, is concerned, if the court should find that the patent in suit is valid in view of the prior art."

[1] The defendant has bound into the record certain prior patents referred to in his answer to be considered by the court as evidence on proof of anticipation. Among them, the Stratton, Matthews, Hubbard, Smart, Dierker, McCormick, Marmon, Hyatt, and Hollowell, fail to disclose, among other things, the horizontal screws for adjusting the bearing-box horizontally and holding it in its adjusted position. Each of these patents also fail to disclose some other essential feature of the construction, forming the subject-matter of the patent in suit. Their very remote embodiment of the material principle, involved in the patent in suit, absolves the court from an attempt to distinguish them. The remaining patents likewise introduced into the case, upon which the defendant places more reliance, the Johnson, Crowell, and Jacquin, while disclosing constructions in which the boxes are vertically and horizontally adjustable, each involve elements which are more complicated and less efficient than those of the Wood patent.

In the Johnson patent, the screws do not directly engage the bearing-box and are not relatively as large as in the Wood, but a series of plugs or blocks interpose between the box and the screws, being fitted in sockets in the frame. This involves complication and expense, and a possibility of losing parts through shipment. Moreover the surfaces on the box, against which the plugs bear, are not surrounded by flanges or shoulders adapted to engage the ends of the plugs and prevent displacement of the box. The displacement of the box is to be prevented by the slightly rounded contacting surfaces of the blocks and plugs, which undoubtedly will prove very insecure since the rounding is necessarily slight. The screws could not be made to engage the box securely, because if hollowed the end of it engaging the cylindrical surface of the box could only engage the full surface in one position of rotation, and the moment it was attempted to turn it for adjustment the screw would not fit the rounded surface, the hollow of the screw coming crosswise to the rounding of the box surface.

The Crowell patents are like the Johnson except that the lateral screws directly engage the box; otherwise, Crowell's embodies all the objectional features of the Johnson patent. In the Crowell patent No. 278,404, the screws $D$ and $D'$ have a very insecure hold on blocks $C$, the entire strain of any displacement, lengthwise of the box, falling upon the little pins $C'$, shown in Figures 1 and 4, is liable thereby to break or tip them out of their sockets.

The Jacquin patent is very complicated and impracticable in its construction, and while all the four movements of the Wood hanger can be accomplished, the construction is very different from it in its essential parts. Some of the elements of the claims of the patent in suit are entirely wanting.

The language of the complainant's expert fully expresses my conclusion that none of these prior constructions embodies either the principle or the substance of either of the claims of the Wood patent; that in none of them do I find an embodiment of the construction defined in either of the claims of it, or the substantial equivalent thereof.

The defendant has introduced seven shaft hangers as physical exhibits (C, D, E, F, H, L, M), photographs of which are contained in the record. The hangers (Exhibits C, F, H, L, and M) have no provisions for lateral bodily adjustment of the bearing box, as provided in the hangers in suit. They deserve to be placed in class with the Stratton, Matthews, Hubbard, Smart, Dierker, McCormick, Marmon, Hyatt and Hollowell patents as wanting the embodiment of the subject-matter of the claims of Wood's patent. Hangers D and E are similar to the Johnson and Crowell patents in that each hanger has a box both vertically and horizontally adjustable, being supported between a pair of vertically arranged screws and a pair of horizontally arranged screws. These hangers, however, differ from the prior Johnson and Crowell hangers, since in no instance is a block or plug arranged between the screws or any of them, and the box, and the boxes are not provided with upper or lower cylindrical surfaces to facilitate the tilting of the box in a vertical plane. In neither case are the vertically arranged screws relatively large and arranged to have their flattened ends engage the laterally extended parallel bearing surfaces on the box, so that the latter may be shifted in a horizontal direction without disturbing the large vertical screws, the box being, nevertheless, firmly supported in each of its adjusted positions, according to the construction of the Wood patent. None of the exhibit hangers, therefore, it appears embody a combination of the essential elements of the claims of the patent in suit, either in substance or in fact; and none of the prior constructions patented or otherwise, embodies the substantial equivalent of the subject-matter of the claims or constructions which is as efficient or has all of the advantages of the construction defined in these claims. That their invention is new and useful, and the result of an inventive act, is beyond doubt. This conclusion is furthermore supplemented by the presumption of the validity of the patent therefor, which can only be overcome by convincing proof of a positive character necessary to convict of crime.

[2] "The defendant is an admitted infringer. The complainant's patent implies novelty and invention; the burden of proof to establish prior use and want of novelty is upon the defendant. Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017. And every reasonable doubt should be resolved against him." Charmbury v. Walden (C. C.) 141 Fed. 373. The proof required is absolutely wanting, even after giving full weight and consideration to the exhibits offered in evidence, without attempt to explain by expert testimony their relations to the patent in suit.

[3] Another feature of this case is that of unfair competition. The bill alleges that complainant's hanger has a distinctive appearance by which the trade have learned to know the product of the complain-

ant, which it charges the defendant with simulating. This may all be true, but it does not appear that any one was deceived thereby, or that the complainant has been inconvenienced or made to suffer by reason thereof. Nor has it been shown that the defendant attempted thereby to palm off his goods with intent to defraud. This could and should have been proven, if such was the case. It furthermore appears that, before complainant placed his hanger upon the market, others have been manufacturing hangers of similar appearance, distinguished only, as in case of defendant's, by their distinctive trade-names. Both the defendant's and complainant's hangers have such distinctive names, and if the complainant desires to further impress his personality upon his product he will find a way to do so.

The language used by the court in the case of Dunlap v. Wilbrandt Surgical Company. 151 Fed. 223, 80 C. C. A. 575, is very apropos, and expresses the conclusion of the court:

"We fail to discover in the record any evidence of fraudulent intent on the part of defendants to palm off their goods on the public as the goods of the complainant. * * * The general resemblance was not such as to deceive the class of persons who would naturally be expected to be interested in or purchase articles of this character. Moreover. those of the complainant were permanently marked as issuing from 'The Globe Mfg. Co., Battle Creek, Michigan. U. S. A.,' while those of the defendants were as indelibly marked 'O. Q. Holman. La Grange. Ill.' The name 'Globe' appeared upon the former and the name 'Eureka' upon the latter. Thus far the defendants did not offend. * * * The literature used by the defendant's advertising was equally distinguishable from that of the complainant; in fact, so much so as to relieve them from the slightest imputation of unfair dealing in that particular."

The conclusion of the court is that the patent is valid, and that the claims thereof have been infringed by the manufacture and sale of defendant's shaft hanger. It follows that the complainant is, in this particular, entitled to the relief sought by its bill, and that defendant should be enjoined from further infringement, which is accordingly so ordered and adjudged, with cost of suit to be taxed against the defendant. The usual reference may be had, if desired, by complainant. The other and further relief sought by the bill is denied.