### T. B. WOOD'S SONS CO. v. VALLEY IRON WORKS.

(District Court, M. D. Pennsylvania. July 24, 1913.)

No. 120.

PATENTS (§ 328*)—INFRINGEMENT—SHAFT HANGER.

The Wood patent, No. 790,609, for a shaft hanger, *held* not infringed by a hanger which lacks the cylindrical surfaces on the upper and lower sides of the bearing box, which is the principal element distinguishing the patented device from the prior art.

In Equity. Suit by the T. B. Wood's Sons Company against the Valley Iron Works for infringement of letters patent No. 790,609, for a shaft hanger, granted to Charles O. Wood May 23, 1905. On final hearing. Decree for defendant.

See, also, 198 Fed. 869.

Edwin J. Prindle, of New York City, for complainant.
F. B. Brock, of New York City, for defendant.

WITMER, District Judge. The validity of the Woods patent was settled in a former suit between the parties hereto, reported in 191

Fed. 196 and 196 Fed. 780, 116 C. C. A. 46, and, as well, the issue of infringement of a shaft hanger then made and sold by the defendant. Whether a certain other deviced hanger, since made and sold by the defendant, constitutes infringement of such patent, is now for determination.

Complainant's and defendant's hangers are alike in certain respects. In appearance they are very similar; but complainant's is not a design patent, and the matter of unfair competition was settled in a former suit.

The hangers differ radically in one essential functional feature. Complainant's hanger has cylindrical bearing surfaces upon the upper and lower sides of the box, while defendant's hanger has perfectly flat bearing surfaces at these same points. These cylindrical surfaces will allow the bearing box, when the flat screws are applied, to adapt itself perfectly to the shaft. It was principally upon this novel and important feature of complainant's hanger, as distinguished from the former art represented in defendant's hanger, that complainant secured his patent and favorable decision of this court. I distinctly recall the emphasis placed by counsel for complainant on this novel and important feature of his patent in an effort to sustain it, and the same was recognized by the court on appeal in these words:

"The patent accomplishes this by means of horizontal screws on the sides and large screws on the top and bottom; these last screws having plane surfaces, but bearing upon a countersunk cylindrical surface or a flanged cylindrical surface. This surface upon which the flat screw bears allows a variation in position of the box, but when once adjusted the flat surface of the screw has sufficient bearing to prevent further movement when the large screw or flange is fastened with a set screw. * * * We are particularly impressed by this on an examination of the patent in suit in comparison with the others, and also by the fact that, after a natural adjustment by the moving of the shaft (the hanger-box adapting itself to any position of the shaft), the box can be firmly screwed in the desired position by means of horizontal screws at the sides of the box and by the large flat vertical screw bearing upon the cylindrical surfaces of the upper and lower sides of the box, and then fixed by a set screw in the large flat screw, the flat screw being prevented by the countersink of flange from escaping from the top or bottom of the box. 196 Fed. 780 [116 C. C. A. 46]."

The language of the defendant's expert witness, Dempster M. Smith, without quoting at length, expresses my views of the matter in these words:

"My deduction from Mr. Freeman's [complainant's witness] primary conclusion, with which I agree, is that the combination and functions of the Wood structure are so very like the prior art that the only novel feature existing in the patent is the transverse cylindrical seat surrounded by a flange, and that, since defendant's structure does not have this seat, it is outside the patent claims. My further conclusion is that defendant's structure in several respects functionates in a slightly different manner from the patent structure, as explained by Mr. Freemen, and that so far as these functions approach the functions of complainant's patent they are common both to that patent and to the prior art, are taught by the prior art, and do not in any way negative the structural distinction between defendant's structure and the claims."

The opinion expressed, I believe, is furthermore borne out by the file wrappers of the Wood patent as embodying the views of the exam-

iner and counsel for the applicant. While it is true that the language of the grant is controlling, and proceedings in the Patent Office are generally not of much importance in the interpretation to be placed upon the claims and specifications of a patent, the opinion and arguments of parties are nevertheless more or less persuasive, as in this case they truly exhibit the impression of the examiner and the limitation conceded by counsel for the applicant.

The claims submitted by Wood's attorney with his original specifications were very broad, and most of them would clearly cover defendant's structure, as well as his own. The examiner rejected all of these claims upon patents to Jacquin, Dierker, Everline, 539,045, and Crowell. These claims were stricken out, and a single one inserted, which describes the box surfaces as—

"cylindrical surfaces, each of which surfaces is cylindrical to an axis passing substantially through the center of the bearing blocks and through the plane of said frame."

This claim was rejected; the examiner saying:

"The patents to Jacquin and to Dierker, jointly considered, clearly anticipate every essential feature of applicant's claim. Jacquin's shows the lateral and vertical adjusting devices in a combination substantially the same as applicant's, and Dierker shows the cylindrical surfaces, with the 'metal about said surfaces being raised to form retaining flanges to insure engages of said screws."

Applicant then struck out this claim and inserted two others. Each of these claims describe:

"Surfaces that are curved only in directions parallel with the shaft axis, * * * forming bearings upon which the bearing box may rock vertically."

In argument the applicant's counsel said:

"The Dierker patent is the only one needing consideration, in view of the limitations of the above claims to the curved surfaces on the bearing box."

These claims were in turn rejected, and the patented claims were then inserted, each containing, as fully pointed out above, the specific "cylindrical surfaces whose axes are transverse to the axis of the bearing." In argument in support of these claims counsel for applicant said:

"The cylindrical surfaces $c$ $c'$ on the bearing box permit the box to rock vertically. * * * Because of the fact that the axes of the cylindrical surfaces are transverse to the shaft, * * * the box can be adjusted vertically without disturbing the vertical screws. * * * The patent to Jacquin does not anticipate, because there are no cylindrical surfaces on the bearing blocks which are engaged by the vertical screws. * * * None of the references shows a bearing box having cylindrical surfaces upon the bearing box which are surrounded by flanges."

The patentee himself thus insisted upon the importance of these cylindrical surfaces, and depended upon them to distinguish his claims patentably from the prior art. Evidently without the inclusions of this specific element the claims would not have been allowed. Defendant's structure omits this essential cylindrical seat. In doing so the

structure becomes identical with the prior art so far as the Wood patent is concerned.

The prayer of the bill is denied, and the bill dismissed, at the cost of the complainant.