EQUITABLE ASPHALT MAINTENANCE CO. v. PARKER-WASHINGTON CO.

(District Court, W. D. Missouri, W. D. July 8, 1912.)

No. 3,408.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MACHINE FOR HEATING SURFACES.

The Lutz patent, No. 839,071, for a machine for heating surfaces, designed for use in repairing asphalt pavement and comprising, generally, means for supplying a fluid heating medium, including a heating chamber, a conduit for such medium, and a jet blower discharging a blast of steam, preferably, into such conduit for forcing the medium against the surface to be treated, mingling with it and modifying its effect, is void for lack of novelty and invention. It covers a combination of elements all of which were old, and the combination itself is only differentiated from others in the prior art by substituting for a fan blower for forcing the heating medium against the surface to be heated, a jet blower which was also old in an analogous art, and its transfer required no more than mechanical skill. Also, *held* not infringed if conceded validity.

2. PATENTS (§ 66*)—ANTICIPATION.

If the effect of a combination was present, though not emphasized, in a prior invention, a later applicant cannot, by mere explicit reference, transform it into patentable novelty and appropriate it to his own exclusive use.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 79, 81; Dec. Dig. § 66.*]

3. PATENTS (§§ 66, 70*)—ANTICIPATION—PRIOR PATENTS.

Rev. St. § 4886 (U. S. Comp. St. 1901, p. 3382), by authorizing a patent for any invention or discovery not known or used by others in this country "and not patented or described in any printed publication," places printed publications and prior patents on the same footing as anticipations.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 79, 81, 85; Dec. Dig. §§ 66, 70.*]

In Equity. Suit by the Equitable Asphalt Maintenance Company against the Parker-Washington Company. On final hearing. Decree for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Arthur C. Brown, of Kansas City, Mo., and Chas. K. Offield, of Chicago, Ill., for complainant.

R. E. Ball, of Kansas City, Mo., and Edward E. Longan and John C. Higdon, both of St. Louis, Mo., for defendant.

VAN VALKENBURGH, District Judge. [1] This is a suit for alleged infringement of United States letters patent No. 839,071, the subject-matter of which is entitled "Machine for Heating Surfaces." The bill of complaint charges infringement, and asks for an accounting and damages, and that the defendant be restrained from further infringement. The defenses are that the matter covered does not involve invention, was not novel at the time of its alleged invention, and that the defendant, in any event, is not guilty of infringement. The answer, therefore, denies the validity of the patent in suit and infringement. But four claims, numbered respectively 1, 2, 3, and 5, of the patent in suit, are involved. These claims are as follows:

"1. An apparatus for heating surfaces, comprising means for supplying a fluid heating medium, a conduit for directing the fluid heating medium against the surface to be heated, and a jet blast discharging into the conduit in a direction to cause a flow of the fluid heating medium toward the surface to be heated and directing the said medium with the blast medium added thereto, against said surface.

"2. An apparatus for heating surfaces, comprising a heating-chamber into which air is passed to develop a fluid heating medium, a conduit through which the fluid heating medium thus developed is directed upon the surface to be heated, a jet blast discharging into said conduit, drawing the heating medium from the combustion-chamber, mingling the blast medium with said heating medium to modify the effect of the latter, driving said heating medium thus modified against the surface to be heated.

"3. In an apparatus for heating surfaces, the combination of a combustion-chamber, means for supplying a fuel medium to said chamber for combustion therein, whereby a fluid heating medium is developed, a conduit for conducting the fluid heating medium from the combustion-chamber to the surface to be heated, a jet blower discharging into said conduit and developing therein a flow of the fluid heating medium toward the surface to be heated, and means for supplying a blowing agent to said jet blower, independent of the fluid heating medium, whereby the fluid heating medium is drawn out of the combustion-chamber, modified by a blowing agent and forced through the conduit to the surface to be heated."

"5. In a machine for heating surfaces, a heating-chamber, means for heating the interior of said chamber, a vertical air-conducting pipe having communication with the interior of said chamber, a hood at the lower end of said pipe, a jet member located in a horizontal position in said pipe, and means for supplying a fluid blast agent to said jet member."

It is the contention of defendant that the device and the various elements purporting to be covered by these claims were anticipated by a large number of prior patents and publications, and relies more particularly upon three patents, numbered, respectively, 330,700, 330,701, and 342,091, issued to David Hawksworth in 1885 and 1886, covering methods and devices of destroying grass, weeds, and vegetation generally on and along railway tracks and roadways; the German patent to Bosenius, No. 89,365, dated March 24, 1895, covering a device for melting snow; the Waterbury patent, No. 157,559, dated December 8, 1874, entitled "Improvement in Machines for Melting Snow"; patent No. 805,337, issued November 21, 1905, to Frank O. Blake et al., entitled "Machine for Heating Surfaces"; patent No. 743,020, issued

November 3, 1903, to John W. Nesmith, entitled "Apparatus for Heating Asphalt. Surfaces"; and patent No. 743,021, dated November 3, 1903, issued to John W. Nesmith and Frank O. Blake, entitled "Method of Heating Asphalt Pavements." The three patents last named are especially designed for heating asphalt pavements in repair work, and that is the use to which machine covered by the patent in suit is specifically applied.

In patent No. 805,337, Lutz, the patentee in the patent in suit, is named as a joint inventor, and that patent was before the examiner when the patent in suit was under consideration; but neither the Hawksworth, the Bosenius, nor the Waterbury patent appears to have been referred to or considered.

It is strongly insisted by complainant that all of these last-named patents belong to an entirely different art and should not be considered as references for anticipation in the present case. It must be admitted, I think, that all the machines covered by the patents enumerated are "heating" machines; further than this, that they are "surface heating" machines, and that this quality is not altered by the fact that some heat surfaces for purposes of destruction while others do the like for purposes of conservation and repair; and even though the heating and repairing of asphalt surfaces may be considered as an art distinct in itself, nevertheless that to which these kindred devices belong is at least so closely analogous that the rules governing double or new uses of the same invention must apply, provided conditions exist which would justify their application in the ordinary administration of the law governing patents. The briefs and arguments of counsel on both sides are ingenious and exhaustive. It will be my purpose to point out my reasons for arriving at the conclusion I have reached without any unnecessary analysis or repetition of the complex mechanical details involved.

It will facilitate both discussion and understanding if the claims invoked by complainant are first discussed with the view of reducing the matter in dispute to its last analysis, thereby eliminating elements which tend to confuse rather than to enlighten. Stripped, for the purposes of this analysis, of unnecessary verbiage, these claims present the following elements:

Claim 1. Apparatus for heating surfaces, comprising:
   (a) Means for supplying a fluid heating medium.
   (b) A conduit for directing this medium against surfaces to be heated.
   (c) A jet blast discharging into this conduit, causing the heating medium to flow toward and directing it against the surface.

Claim 2. Apparatus for heating surfaces, comprising:
   (a) A heating chamber into which air is passed to develop fluid heating medium.
   (b) A conduit as in claim 1.
   (c) A jet blast as in claim 1, with the addition of
   (d) Mingling with the heating medium and modifying the latter.

Claim 3.   In such apparatus the combination of:
>    (a) A combustion-chamber.
>    (b) Means of supplying fuel medium to same, whereby a fluid heating medium is developed.
>    (c) A conduit as before.
>    (d) A jet blower discharging into this conduit as before.
>    (e) Means for supplying a blowing agent to the jet blower, whereby the heating medium is drawn out, modified, and forced to the surface.

Claim 5.   In such a machine:
>    (a) A heating-chamber.
>    (b) Means for heating the interior of such chamber.
>    (c) A vertical air conducting pipe (conduit).
>    (d) A jet member located in horizontal position in said pipe.
>    (e) Means for supplying a fluid blast agent to said jet blower.

Again condensing we have:

1. An apparatus for heating surfaces, comprising.
>    (a) Means for supplying a fluid heating medium, including a heating chamber.
>    (b) A conduit for directing this heating medium against the surface.
>    (c) A jet blast discharging into this conduit, causing the medium to flow toward and directing it against the surface, mingling with it and modifying its effect.

2. In such an apparatus the combination of:
>    (a) A combustion or heating chamber.
>    (b) Means for heating the interior of such chamber, including the supplying of a fuel medium to same.
>    (c) A vertical air conducting pipe or conduit.
>    (d) A jet member or blower located in horizontal position in said pipe and discharging into it.
>    (e) Means for supplying a blowing or fluid blast agent to said jet member, whereby the heating medium is drawn out, modified by same, and forced to surface.

Independently then of the apparatus as a whole, we have the following distinct elements referred to:

(a) A heating or combustion chamber.

(b) Means of heating it, whether by fuel supply pipe and burner or otherwise.

(c) A conduit for directing heating medium developed against surface.

(d) A jet blower discharging into this conduit, causing the heating medium to flow forward, directing it against the surface, mingling with it and modifying its effect, and involving

(e) Means for supplying a blowing or fuel blast agent to this jet blower.

It was admitted by complainant's assignor in his application before the Department, and by counsel for complainant in their brief and

argument, that in surface heating machines a heating or combustion chamber and a fuel burner, as well as a hood for confining the heat at the surface (the latter, however, not involved in these claims) are "old and well known in the art," and that "steam or compressed air used as a blast or blowing agent is well known, and a claim for such device alone is not made." Of course, a jet blower or member, being a pipe appropriately fashioned for delivering such a blast, was also well known, and a conduit for directing a heating medium against the surface to be heated had long been used in all asphalt repair as well as all surface heating machines. It is quite clear, therefore, that every mechanical element recited in these claims, standing by itself, is old and well known in some form of apparatus covered by prior patent or publication. Unless, then, the combination here present involves the exercise of the inventive faculty, the development of some idea, which can be deemed new or original in the sense of the patent laws, it must be conceded that this patent must fail. It will be serviceable, therefore, to differentiate exactly what it is, involving novelty and invention, which complainant claims for its combination of old elements. Of the utility of its complete machine there can be little question. We shall arrive at this knowledge most satisfactorily by an examination of the inventor's attitude of mind from the date of his application to that of the issuing of the patent as disclosed by the file wrapper and contents.

The first claims were rejected as being in conflict with the prior patent to Blake and others. Replying to this the applicant referred to the fact that in the Blake patent a fan mechanism was used for forcing the hot products of combustion down upon the surface. It was then pointed out that this device would soon get out of order, by reason of its essential position in the mechanism, and that the applicant's jet blower was a novel and effective substitute for this fan mechanism. This is the only feature of the new patent which was emphasized in the proposed machine, and the examiner would be led to infer that this was the specific object to be attained. To this the examiner made reply that a certain part, numbered 20, in the Blake patent, was a jet blower, and therefore within the terms of the alleged new device. The applicant replied by revising his claims without substantial change, to which the examiner again objected with the statement that there was "no invention merely in substituting one form of blowing means for another"; and, further, that the blowing device of the applicant was nothing more than the forced draft device used in locomotives and the like. Thereupon the applicant reiterated that the fan used in the Blake patent was not patentable in itself, and was a well-known method for exhausting and blowing. He reasserts that his claim is, in fact, limited to a new combination of old elements, the purpose of which was to do away with the fan and its cumbrous system of belting bearings and small parts which may be easily broken and rendered useless from heat and want of lubrication; admits that, while the blower is unquestionably old, its operation is different from others used in the proposed device. Apparently the only virtue claimed was the advantage over the old form of fan blow-

er; the object in both cases being to bring the heated products of combustion to the surface. To this the examiner replied that the applicant "has merely substituted for the fan blower of the reference a blower of another type equally well known. This change, broadly, does not, of course, amount to invention. Hence claims 1, 2, and 3, and in this view of the case claim 4, are rejected."

Thereupon the applicant again revised his claims, and this time makes especial reference to the jet member being located in a horizontal position in the conduit and having jet holes in its lower portion, and means for supplying a fluid blast agent to said jet member. He concludes as follows:

"The present claims, being limited to applicant's structure, are thought to be allowable over the reference."

This amendment met with the same fate at the hands of the examiner, as did a subsequent amendment, and for the same stated reasons. Meantime this correspondence between the applicant and the Department had extended from February 6 to August 9, 1906. On October 11, 1906, a local Washington patent attorney was associated. New claims were drawn, which apparently presented the same distinctive and emphasized feature; that is, the substitution of a jet blower for a fan blower as a more effective means of forcing the heat to the surface. In forwarding these amended claims the attorney for the applicant advanced the new idea that the jet blast would not only direct the heating medium more forcibly against the surface, but "will complete combustion of such combustible gases as may pass from the combustion-chamber in unconsumed state, thereby keeping up or even raising the temperature of unconsumed of the heating medium." The claims were again rejected. Then, for the first time, on November 27, 1906, the idea that a jet blast discharging into the conduit and drawing the heating medium from the combustion-chamber would, by mingling the blast medium with said heating medium, modify the effect of the latter with beneficial effect, appears in the claims submitted, and upon that idea, evidently deemed novel and inventive, the patent was issued.

Of course, it may not be contended that the rulings of the examiner nor even the attitude of the applicant before the Department are conclusive of the ultimate question of patentability, provided the device actually patented presents novelty, invention, and utility; but the discussion is instructive as disclosing the particulars in which the inventor differentiates his apparatus from other patented devices, and what matters were considered while the examination was being made and the final decision reached.

It would appear therefore that the only novel effect finally claimed and allowed was the presence of the jet member in horizontal position in the conduit or pipe as the instrumentality of forcing the heating medium upon the surface, with the added function of modifying this heating medium in such manner as to render it more effective for the uses for which it is employed. It will be remembered that the Hawksworth, Bosenius, and Waterbury patents were not referred to in this discussion, and were not presently before the examiner while this patent was under consideration. Therefore the presumption aris-

ing from the issue of the patent is much weakened as against the claim of anticipation arising from such prior patents.

The defense claims: First, that all these patents last named, and more particularly the Hawksworth patents, present a complete anticipation, not only in individual elements, but in combination, of the patent in suit; second, that the patents of Blake and others, Nesmith, and Nesmith and Blake, present equally a complete anticipation in individual elements and in combination, with the possible exception of the jet blower, and one of complainant's experts testified that this element is, in fact, present in the Blake machine; third, that, in any event, the present patent presents merely the removal of a single old and well-known element, namely, the jet blower, from the Hawksworth machine and its introduction as a mere equivalent for the fan blower into the Blake machine, a proceeding involving nothing more than mechanical skill and incidental improvement, and nothing arising to the plane of invention, and, in this connection, that the modifying effect of the steam blast upon the heating medium expelled, which is the special virtue claimed for the patented device in suit, is expressly taught and referred to in the Hawksworth patents, and, even though not expressly referred to, was nevertheless present as a matter of fact, and therefore an inseparable part of the prior invention; fourth, that everything complainant could insist upon in any view must be limited to its specific structure as described in its specifications and drawings, which would be a jet member located in a horizontal position in the conduit and having jet holes in its lower portion, with a blowing or fluid blast agent of compressed air, or preferably steam, that the defendant uses no structure specifically like this, that it employs neither compressed air nor steam, nor any agent capable of producing a jet blast, properly so called, but, on the contrary, uses the fan contrivance which complainant expressly sought to displace, and therefore it is not guilty of an infringement, even though complainant's patent be held valid. In all these contentions, I am constrained to agree with the defendant.

First, with respect to the Hawksworth patents: These devices were designed to force the hot products of combustion down upon the surface for the purpose of destroying vegetation along railroad tracks and roadways. They had a combustion-chamber within the meaning of this patent, and means for supplying a fuel medium and developing a fluid heating medium. This was admitted by plaintiff's expert testifying with respect to the Waterbury patent, a device practically identical with the Hawksworth patent in this respect. The applicant in the patent in suit made no claim with respect to a combustion-chamber nor the means of supplying a fluid medium, admitting such parts to be old and well known in the art. Furthermore, it appears that in actual practice complainant's machine, made under the patent in suit, employs an ordinary locomotive fire box boiler as its combustion chamber; just as is done in the Hawksworth machine. It is not contended that the means of producing the hot products of combustion employed are limited in method, or new in any aspect.

The Hawksworth machines have a conduit or conduits for directing

the heating medium developed against the surface. They also have a steam jet injected into and communicating with this channel of movement, causing the heating medium to flow forward and downward, and directing it against the surface. The alleged novel effect of this jet blast mingling with such heating medium, and modifying it, is present in the Hawksworth machine. In the last letter of transmission to the Patent Office, preceding the issuance of the patent in suit, it was said:

"Applicant * * * calls attention to the fact that steam is the blast medium preferably used by reason of the facility for producing it, and its desirability as a means for injecting a fuel, and that the modifying effect of this blast medium is not to increase the heating, but to modify the heating, which is in reality one of the main features of the apparatus disclosed in this case."

In his specifications forming part of letters patent No. 342,091, Mr. Hawksworth says:

"In order to carry the process into effect, * * * the products of combustion from the furnace are directed from the smokestack to a flue leading to the ground, the impelling agent being steam under pressure directed into the downward flue. * * * Thus the combined blighting influences of the products of combustion and the hot steam are brought to bear upon the vegetation, producing a more effective and economical destroying agent than steam alone, and a far more desirable one than the hot products of combustion alone, since the steam, while destructive in itself, serves to modify the hot products of combustion, etc."

[2] It will thus be seen that this very function was expressly taught in the Hawksworth patent 20 years before; but, even though it had not been specifically referred to, the result would have been the same. If the effect of the combination was present, though not emphasized in a prior invention, a later applicant could not, by mere explicit reference, transform it into patentable novelty and appropriate it to his own exclusive use. No new principle appears in the Lutz patent which was not disclosed in the Hawksworth and other patents, and the mere changes in detail necessary to adapt the latter to the analogous use of the former does not, in my opinion, amount to invention. Brown et al. v. Piper, 91 U. S. 37, 23 L. Ed. 200.

"It is not necessary, to constitute an anticipation of a process patent, that the two processes should be identical in all particulars; but it is sufficient if in general aspects they are the same, and the difference in minor matters is only such as would suggest itself to a person possessing ordinary skill in the art." Model Bottling Machinery Co. v. Anheuser-Busch Brewing Association, 190 Fed. 573, 111 C. C. A. 389; Lovell Mfg. Co. v. Cary, 147 U. S. 623, 13 Sup. Ct. 472, 37 L. Ed. 307.

[3] Counsel for complainant practically concede the pertinency of the Hawksworth inventions to this inquiry when they admit that:

"The Hawksworth patents might be valid reference, as publications, against the patent in suit, irrespective of their actual construction."

The statute (Rev. St. § 4886 [U. S. Comp. St. 1901, p. 3382]), however, places printed publications and prior patents on the same footing in the following language:

"Any person who has invented or discovered. any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, etc."

Passing now to the patents of Blake and others for heating asphalt surfaces, it was practically conceded, both before the Patent Office and at the hearing, that practically the only advantage gained over the former patents was the substitution of the jet blower for the fan blower with the accompanying incidental and beneficial effect just referred to. It was conceded by one of complainant's experts that the Blake patent contained what might be fairly termed a jet blower. Whether that produced this same modifying effect as is here claimed is in dispute, and whether a mere mechanical rearrangement of the parts so as to impart greater efficiency in this particular would amount to invention may likewise be disputed. In any event, however, the improvement, at most, would consist in the importation of this already known modifying jet blast from the old Hawksworth machine into the old Blake device so as to make a combination consisting entirely of elements well known in the art. In my opinion, this would not amount to invention within the meaning of the patent law. As was said by Judge Ray in the case of Tubelt Co. v. Friedman et al. (C. C.) 158 Fed. 439:

"It will not do to find patentable invention in a device or structure where all its elements are found in the prior art, and all the alleged inventor does to produce it is to take one of the prior patented devices, and leave out one of its elements and substitute in place thereof a well-known equivalent taken from another device of the same kind, where it was used for the same purpose, operated in the same way, and produced the same results as is required in its new location, and the sole result of the substitution is that the substituted element operates or works a little better than did the displaced one, and thereby the operation of the alleged new structure is somewhat improved. This is improvement, but not invention. It may be a successful experiment, but there is no novelty." Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438; Hollister v. Benedict & Burham Mfg. Co., 113 U. S. 59, 5 Sup. Ct. 717, 28 L. Ed. 901; Heald v. Rice, 104 U. S. 754, 26 L. Ed. 910; Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 27 Sup. Ct. 307, 51 L. Ed. 645; Busell v. Stevens, 137 U. S. 423, 11 Sup. Ct. 150, 34 L. Ed. 719.

For the reasons above stated, it is my conclusion that the claims in suit were anticipated in prior patents, and that the Lutz patent is void for lack of patentable novelty and invention. Finally, upon the question of infringement, in view of the history of this patent, we must agree that, if this combination be patentable at all, complainant must be limited to its specific structure as described in its specifications and drawings, which would be a jet member located in a horizontal position in the conduit, and, probably, having jet holes in its lower portion, together with a blowing or fluid blast agent of compressed air, or preferably steam. Three drawings are presented for the purpose of illustrating the construction of defendant's machine. One on the part of complainant, "Exhibit U," is a drawing made by Mr. Lutz from a description given to him by Mr. Ballintine, who was

then operating the machine; another is one furnished by Mr. Roy Cross, at the instance of complainant; and the third is defendant's exhibit, "Drawing Furnished by Blackledge of Defendant's Apparatus," the latter gentleman being closely associated with the operation of defendant's machine. Of these three drawings, those by Blackledge and Cross are substantially the same; that of Exhibit U—whether this is the actual construction used is by no means satisfactorily established—shows a somewhat tapering end to the jet blower. None of the drawings conform to the specifications for complainant's apparatus, and this is not claimed to be a pioneer patent, nor is it one in which the doctrine of equivalents could be rigidly applied, if at all. All the drawings show the presence of the fan mechanism as the means of supplying the blowing agent; neither steam nor compressed air is used, and this mechanism, as has been seen, was employed in prior patents, and its use disclaimed in the patent in suit. In fact, one of the main claims of superiority for the Lutz patent was the displacement of the fan blower.

"A greater degree of liberality and a wider range of equivalents are permitted where the patent is of a pioneer character than when the invention is simply an improvement, although the last and successful step, in the art theretofore partially developed by other inventors in the same field. As the inventor is required to enumerate the elements of his claim, no one is the infringer of a combination claim unless he uses all the elements thereof. Where the patent does not embody a primary invention but only an improvement on the prior art, the charge of infringement is not sustained if defendant's machines can be differentiated." Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 25 Sup. Ct. 697, 49 L. Ed. 1100; Dunlap v. Willbrandt Surgical Mfg. Co. et al., 151 Fed. 223, 80 C. C. A. 575.

I do not find that the claim of infringement has been sustained even though complainant's patent were upheld. The bill will be dismissed at complainant's costs, and a decree may be entered in accordance with this opinion.